[Cite as *State v. Bray*, 2017-Ohio-118.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

STATE OF OHIO                        :
                                     :
    *Plaintiff-Appellee*              :       Appellate Case No. 2016-CA-22
                                     :
v.                                   :       Trial Court Case No. 2015-CR-641
                                     :
HAUNZ J. BRAY, III                   :       (Criminal Appeal from
                                     :       Common Pleas Court)
    *Defendant-Appellant*            :
                                     :

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of January, 2017.

. . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

STEVEN P. BILLING, Atty. Reg. No. 0061063, P.O. Box 1671, Columbus, Ohio 43215
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Haunz Bray, appeals from his conviction and sentence on one count of Attempted Murder with a firearm specification. After pleading guilty, Bray was sentenced to 11 years in prison on the Attempted Murder charge, three years on the firearm specification, and six years on an Aggravated Burglary charge that arose from the same incident. The Attempted Murder sentence was ordered to be served consecutive to the Aggravated Burglary charge, resulting in a total prison term of 20 years.

{¶ 2} In support of his appeal, Bray contends that the trial court abused its discretion by imposing the maximum sentence for the Aggravated Murder charge, and by imposing the sentences consecutively. We conclude that the trial court did not commit any error. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} In October 2015, Bray was indicted for Aggravated Burglary, with a firearm specification, in Clark County Common Pleas Court Case No. 2015-CR-527. Subsequently, on December 8, 2015, Bray was indicted on one count of Attempted Murder with a firearm specification, one count of Felonious Assault, and one count of Tampering with Evidence in Clark County Common Pleas Court Case No. 2015-CR-641. The cases were consolidated on December 14, 2015, at the State's request.

{¶ 4} The charges against Bray arose from events that occurred on October 2, 2015. On that evening, Bray, together with another individual (Darious Hull), broke into a residence located at 136 Southern Avenue, in Springfield, Ohio. Bray and Hull were in possession of a firearm. At the time, the residence was occupied, but the residents

fled and called 911. Springfield police officers, Justin Massie and Cassidy Cantrell responded to the call.

{¶ 5} As Massie and Cantrell approached the residence, they saw Bray and Hull removing a TV from the address. When Cantrell announced the presence of the police, Bray dropped the TV and fired multiple rounds in Cantrell's direction. Cantrell was required to take evasive action in order to avoid being hit. Bray and Hull then fled on foot, but were apprehended shortly thereafter.

{¶ 6} When these crimes occurred, Bray was 18 years old. Bray did not have any prior adult felony charges, but he did have several prior juvenile charges, including the following charges: two separate Assaults, Falsification, Attempted Breaking and Entering, Domestic Violence, Felonious Assault, and a probation violation. When the Attempted Murder occurred, Bray also had an outstanding adult warrant from Montgomery County, based on a failure to appear in connection with a charge of having fictitious license plates.

{¶ 7} On February 12, 2016, Bray pled guilty to Attempted Murder and Aggravated Burglary. In exchange, the State agreed to dismiss the firearm specification on the Aggravated Burglary charge, and to dismiss the charges of Felonious Assault and Tampering with Evidence. The trial court ordered a presentence investigation report ("PSI") and scheduled sentencing for March 10, 2016. At the sentencing hearing, the court heard the victim statement of Officer Cantrell. In addition, Bray and members of his family spoke in mitigation. After considering the PSI, which included letters received from Cantrell, Massie, and friends and family members of Bray, the trial court sentenced Bray as noted above. Bray now appeals from his convictions and sentence.

## II.   Discussion Related to Notice of Appeal

**{¶ 8}** Before addressing Bray's assignments of error, we note that even though the trial court consolidated the cases, Bray's notice of appeal was filed only with respect to Case No. 2015-CR-641, which pertains to the Attempted Murder conviction.   Bray did not file a notice of appeal in Case No. 2015-CR-527, and the judgments attached to his notice of appeal bear the case number only of 2015-CR-641.

**{¶ 9}** "A party seeking to appeal must timely file a proper notice of appeal to invest the court of appeals with jurisdiction to review a final judgment or order of the trial court." (Citation omitted.)   *State v. Dixon*, 9th Dist. Summit No. 21463, 2004-Ohio-1593, ¶ 6. "App.R. 3(D) outlines the content of the notice.   Specifically, this Rule states, in relevant part, that '[t]he notice of appeal shall specify the party or parties taking the appeal; *shall designate the judgment, order or part thereof appealed from*; and shall name the court to which the appeal is taken.' "   (Emphasis sic.)   *Id.*

**{¶ 10}** App.R. 3(F) permits amendment of notices of appeal to include additional judgments, but the ability to allow amendment is restricted to situations where "the amendment does not seek to appeal from a trial court order beyond the time requirements of App.R. 4."   Because App.R. 4(A)(1) provides a 30-day time limit for filing notices of appeal, the time for filing a notice of appeal regarding Case. No. 2015-CR-527 has elapsed.   As a result, we are without jurisdiction to review anything regarding that case. *Dixon* at ¶ 7.   We, therefore, will address issues pertaining solely to the plea agreement and judgment of conviction and sentence for Bray's Attempted Murder conviction and attendant firearm specification.

## II. Appeal of Maximum Term for Attempted Murder

{¶ 11} Bray's First Assignment of Error states that:

The Trial Court Erred in Imposing the Maximum Term of Imprisonment for the Conviction of Attempted Murder.

{¶ 12} Under this assignment of error, Bray contends that the trial court's decision to impose the maximum sentence for Attempted Murder was arbitrary and unsubstantiated, and failed to comply with the standards for imposing maximum sentences. In particular, Bray points to his lack of a prior adult felony record, the trial court's emphasis on his juvenile record, and the fact that the PSI indicated that he has a low rate of recidivism.

{¶ 13} R.C. 2929.14(A)(1) provides a maximum term of imprisonment of 11 years for first-degree felonies. Trial courts have " 'full discretion to impose any sentence within the authorized statutory range, and * * * [are] not required to make any findings or give * * * reasons for imposing maximum or more than minimum sentences.' " *State v. Mitchell*, 2d Dist. Clark No. 2014-CA-108, 2016-Ohio-1422, ¶ 6, quoting *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). Nonetheless, when trial courts exercise their discretion, they "must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12." (Citations omitted.) *Id.*

{¶ 14} The overriding principles of felony sentencing under R.C. 2929.11(A) are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government

resources." In order to accomplish those purposes, courts must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* Additionally, R.C. 2929.11(B) provides that felony sentences "shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 15} Under R.C. 2929.12(A), courts must also consider factors in divisions (B) and (C) pertaining to the seriousness of an offender's conduct; factors in divisions (D) and (E) regarding the likelihood of recidivism, any factors in division (F) relating to service in the Armed Forces, and any other relevant factors.

{¶ 16} The standard of review for felony sentences is that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, applying R.C. 2953.08(G)(2).

{¶ 17} R.C. 2953.08(G)(2) concerns findings made under R.C. 2929.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C)(4), and R.C. 2929.20(I). Although other sentences do not require the specific findings addressed by R.C. 2953.08(G)(2), *Marcum* stated that "it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court." *Id.* at ¶ 23.

{¶ 18} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 19} In the case before us, the trial court indicated that it had considered the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors under R.C. 2929.12, and the sentencing guidelines in R.C. 2929.13. The court concluded that Bray's conduct was more serious than conduct normally constituting the offense, pursuant to R.C. 2929.12(B)(2), because the victim, Officer Cantrell, had suffered serious psychological harm. The court also found no factors making the offense less serious under R.C. 2929.12(C).

{¶ 20} Regarding the likelihood that Bray would commit future crimes, the court found that Bray's prior adjudication as a juvenile delinquent and the fact that he had not been satisfactorily rehabilitated, made it more likely that he would commit future crimes. R.C. 2929.12(D)(2) and (3). As to whether Bray demonstrated genuine remorse, the trial court expressed doubt that this was the case. R.C. 2929.12(E). Based on Bray's juvenile record, which demonstrated an escalating degree of violence despite intervention, the court also concluded that there was a great likelihood of recidivism. Furthermore, the court found that the factors in R.C. 2929.13(D), which are to be reviewed in felonies of the first-degree, did not overcome the presumption in favor of a prison term.

{¶ 21} We cannot find that the record clearly and convincingly fails to support the

trial court's findings.   We have reviewed the entirety of the PSI and the record, and they support the court's findings.

**{¶ 22}** At the sentencing hearing, Officer Cantrell asked the court to impose the maximum term, indicating that Bray fired shots at her to kill her, not to escape or from fright.   Other statements by Cantrell in the PSI demonstrate the degree of psychological harm she suffered, including questions about whether she could even return to work as a police officer after this incident.   The fact that police work is necessarily dangerous, as Bray suggests, does not diminish the harm that he caused.

**{¶ 23}** We have previously stressed that "[u]nlike consecutive sentences, the trial court [is] not required to make any particular 'findings' to justify maximum prison sentences."  (Citation omitted.)   *State v. Dixon*, 2d Dist. Clark No. 2015-CA-67, 2016-Ohio-2882, ¶ 14.   Instead, as was noted above, in order to modify or vacate a trial court's sentence, we must find " 'by clear and convincing evidence that the record does not support the sentence.' "   *Id.*, quoting *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23.   Again, after reviewing the record, we cannot make such a finding.   Accordingly, the First Assignment of Error is overruled.

## IV.   Appeal of Consecutive Sentence

**{¶ 24}** Bray's Second Assignment of Error states that:

> The Trial Court Abused Its Discretion in Running the Sentence for
> Aggravated Burglary Consecutive With the Sentence for Attempted Murder.

**{¶ 25}** Under this assignment of error, Bray concedes that the trial court made all the statutorily required findings for ordering Bray's prison terms to be served

consecutively. However, Bray contends that the court's findings are contrary to the PSI and other factors taken into consideration in ordering consecutive sentences. In this regard, Bray focuses on his score in the low to moderate risk level in all categories of the risk assessment report and the fact that the report indicated he was amenable to community control.

{¶ 26} Bray further points out that all his prior criminal history occurred when he was a juvenile, and that the harm Officer Cantrell faced the day of the shooting was nothing unusual or out of the ordinary for a police officer.

{¶ 27} Before addressing Bray's arguments, we note that the consecutive term was imposed for the matter that is currently on appeal, i.e., the trial court held that the sentence imposed for Attempted Murder should run consecutive to the term imposed for Aggravated Burglary. March 14, 2016 Judgment Entry of Conviction, Warrant for Removal, p. 2. As a result, imposition of the consecutive term is properly before us and may be considered, despite Bray's failure to appeal in Case No. 2015-CR-527.

{¶ 28} R.C. 2929.14(C)(4) allows courts to impose consecutive sentences if they find "that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public * * *." Courts must also find that one of the three additional factors in R.C. 2929.14(C)(4)(a)-(c) applies in order to impose consecutive sentences.

{¶ 29} As pertinent here, the trial court made a finding under R.C. 2929.14(C)(4)(b) that "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed

was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." The court made a further finding under R.C. 2929.14(C)(4)(c) that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." Judgment Entry of Conviction, pp. 3-4.

{¶ 30} Again, we review this matter under the deferential standard imposed by *Marcum* and R.C. 2953.08(G)(2). *Dixon*, 2d Dist. Clark No. 2015-CA-67, 2016-Ohio-2882, at ¶ 14-15, citing *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23.

{¶ 31} Although the statute requires only one finding under R.C. 2929.14(C)(4)(a)-(c), the trial court made two findings. With respect to the finding under subsection (b), we agree with the trial court as to the unusual seriousness of the harm caused by Bray's conduct. As we said previously, the fact that officers encounter potential danger in their work does not discount the harm that Officer Cantrell suffered. Furthermore, prior to the time Cantrell arrived, shots were fired into the house where the Burglary occurred, without any apparent concern for whether the occupants would be harmed or even killed. Transcript of Disposition, p. 9. Luckily, the occupants were able to flee without having been injured. Then, after Cantrell arrived and announced the presence of the police, Bray shot directly at her, not to escape or from fear, but to kill her. *Id.* at p. 5. Thus, the findings under R.C. 2929.14(C)(4)(b), alone, support imposition of consecutive sentences.

{¶ 32} Regarding the finding under R.C. 2929.14(C)(4)(c) as to Bray's criminal

history, it is true that his history was mostly confined to juvenile offenses. However, after detailing Bray's juvenile offenses, which included violent assaults and the fact that the juvenile court spent a great deal of time trying to help Bray, the trial court observed that Bray still continued his violent conduct, putting Cantrell's life in danger. *Id.* at pp. 25-28 and 32.

{¶ 33} The PSI does show a score of moderate (not low) risk on the Ohio Risk Assessment Survey. However, the trial court gave this little weight because Bray was being sentenced for his first adult offenses. Transcript of Disposition, p. 29. The record is also unclear as to whether the PSI made a specific recommendation regarding community control. The State contends that the PSI does not recommend community control, but the Risk Assessment does state "Overall Impression: Assessment: Community Supervision, Final Risk Level: Moderate." Nonetheless, even if the PSI had recommended community control, "[a] trial court is not bound to follow recommendations made in a PSI, and does not abuse its discretion when it sentences a defendant within the statutory range of confinement." *State v. Gavin*, 2d Dist. Montgomery No. 20783, 2005-Ohio-4738, ¶ 5. Again, this additional finding about Bray's criminal history was not even required, given the finding from R.C. 2929.14(C)(4)(b).

{¶ 34} Accordingly, based on the preceding discussion, the Second Assignment of Error is overruled.

## V. Conclusion

{¶ 35} All of Bray's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and HALL, J., concur.

Copies mailed to:

Megan M. Farley
Steven P. Billing
Hon. Richard J. O'Neill